IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BASILENE L. HENSON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:13-cv-1151-G-BN |
| | § | |
| TIMOTHY F. GEITHNER, Secretary of | § | |
| the Treasury, | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

This case has been referred to the United States magistrate judge for pretrial

management pursuant to 28 U.S.C. § 636(b) and a standing order of reference. The

undersigned magistrate judge issues the following findings of fact, conclusions of law,

and recommendation that Defendant's Motion for Summary Judgment be granted.

**Procedural Background**

Plaintiff Basilene Henson, who is *pro se*, was employed as a secretary by the

Internal Revenue Service. She sued Defendant Timothy F. Geithner, Secretary of the

Treasury, alleging employment discrimination based on her race and retaliation for

filing several Equal Employment Opportunity Commission ("EEOC") complaints. She

had filed two previous cases against her employer, which were consolidated. The Court

granted summary judgment and dismissed those cases with prejudice. *See Henson v.

Geithner*, No. 3:11-cv-1892-D, No. 3:12-cv-673-D, 2013 WL 55953, at *1-*2 (N.D. Tex.

Jan. 4. 2013).

-1-

Defendant filed a motion for summary judgment asserting that Plaintiff's claims in this case are barred by res judicata because they arise from the same continuing course of allegedly discriminatory conduct as alleged in the prior cases. *See* Dkt. No. 26. Defendant alternatively asserts that Plaintiff fails to make a *prima facie* case of discrimination, retaliation, and hostile work environment and that Plaintiff cannot refute Defendant's legitimate non-discriminatory business reasons for its actions. *See id.*

Plaintiff filed a response. *See* Dkt. No. 30. Her response is unsigned and unsworn, and she attached unauthenticated documents to the response. *See* Dkt. No. 30. The deadline for Defendant to file a reply has elapsed, and his motion for summary judgment is now ripe for decision.

The Court determines that Defendant's Motion for Summary Judgment should be granted because Plaintiff's claims are barred by res judicata.

## Legal Standards

Under Fed. R. Civ. P. 56, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual "issue is material if its resolution could affect the outcome of the action." *Weeks Marine, Inc. v. Fireman's Fund Ins. Co.*, 340 F.3d 233, 235 (5th Cir. 2003). "A factual dispute is 'genuine,' if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." *Crowe v. Henry*, 115 F.3d 294, 296 (5th Cir. 1997).

If the moving party seeks summary judgment as to his opponent's claims or

defenses, "[t]he moving party bears the initial burden of identifying those portions of the pleadings and discovery in the record that it believes demonstrate the absence of a genuine issue of material fact, but is not required to negate elements of the nonmoving party's case." *Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998). "Once the moving party meets this burden, the nonmoving party must set forth" – and submit evidence of – "specific facts showing a genuine issue for trial and not rest upon the allegations or denials contained in its pleadings." *Id.*; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (en banc).

The Court is required to view all facts and draw all reasonable inferences in the light most favorable to the nonmoving party and resolve all disputed factual controversies in favor of the nonmoving party – but only if both parties have introduced evidence showing that an actual controversy exists. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005); *Lynch Props.*, 140 F.3d at 625. "Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment,"*Brown v. City of Houston,* 337 F.3d 539, 541 (5th Cir. 2003), and neither will "only a scintilla of evidence" meet the nonmovant's burden, *Little*, 37 F.3d at 1075. Rather, the non-moving party must "set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). If, "after the nonmovant has been given an opportunity to raise a genuine factual issue," "the record, taken as a whole, could not lead a rational trier of fact to find for the

non-moving party, then there is no genuine issue for trial." *DIRECTV, Inc. v. Minor*, 420 F.3d 546, 549 (5th Cir. 2005); *Steadman v. Texas Rangers*, 179 F.3d 360, 366 (5th Cir. 1999).

The Court will not assume "in the absence of any proof ... that the nonmoving party could or would prove the necessary facts" and will grant summary judgment "in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." *Little*, 37 F.3d at 1075. "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment," and "[a] failure on the part of the nonmoving party to offer proof concerning an essential element of its case necessarily renders all other facts immaterial and mandates a finding that no genuine issue of fact exists." *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006) (internal quotation marks omitted).

The verified complaint and sworn interrogatory answers of a *pro se* litigant can be considered as summary judgment evidence to the extent such pleadings comport with the requirements of Rule 56(e). *See King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994); *accord Hart v. Hairston*, 343 F.3d 762, 765 (5th Cir. 2003) ("On summary judgment, factual allegations set forth in a verified complaint may be treated the same as when they are contained in an affidavit."). Here, Plaintiff's Complaint is neither signed nor verified. See Dkt. No. 3.

## Analysis

Res judicata, also known as claim preclusion, bars the litigation of claims that

either have been litigated or should have been raised in an earlier suit. *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 571 (5th Cir. 2005). The test for res judicata has four elements: (1) the parties are identical in both suits; (2) the prior judgment was rendered by a court of competent jurisdiction; (3) there was a final judgment on the merits; and (4) the same cause of action was involved in both cases. *See id.*; *Nilsen v. City of Moss Point*, 701 F.2d 556, 559 (5th Cir. 1983).

Defendant has established the first three elements in this case. The parties in all three cases are identical, and the prior judgment in the consolidated cases was rendered by a court of competent jurisdiction and was a final judgment on the merits. *See Daigle v. Opelousas Health Care, Inc.*, 774 F.2d 1344, 1348 (5th Cir. 1985) ("Summary judgment is a judgment on the merits.").

The Court evaluates the fourth element under a "transactional test," where "the critical issue is not the relief requested or the theory asserted but whether the plaintiff bases the two actions on the same nucleus of operative facts." *Agrilectric Power Partners, Ltd. v. General Elec. Co.*, 20 F.3d 663, 665 (5th Cir. 1995). "If the factual scenario of the two actions parallel, the same cause of action is involved in both." *Id.* "The substantive theories advanced, forms of relief requested, types of rights asserted, and variations in evidence needed do not inform this inquiry." *Id.* The Court must review the facts contained in each complaint to determine whether they are part of the same transaction or series of transactions, which arise from the same nucleus of operative facts. *See Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 313 (5th Cir. 2004).

According to Defendant's uncontroverted summary judgment evidence, Plaintiff developed a history of tardiness and unexcused absences. *See* Dkt. 21-1 (App. 288). Her first line supervisor, Regina Smith, initiated procedures requiring Plaintiff to notify Smith by email when she arrived at work, went to and returned from lunch, departed work, and any time that she would be away from her work station for more than 15 minutes, and those procedures were continued when Jeanette Ingram became Plaintiff's first-line supervisor in December 2010 and until Plaintiff was terminated on May 18, 2012. *See id.* (App. 25, 82, 288, 290). Plaintiff also was required to follow rules outlined in a document entitled "Secretarial Expectations." *See id.* (App. 28-34, 102-04). Plaintiff's Annual Performance Appraisal was lowered, and Plaintiff received two two-week unpaid suspensions in 2010 because of numerous unexcused absences, tardiness, AWOLs, failure to follow managerial instructions, and unprofessional conduct, including a threat to slap and hurt Smith. *See id.* (App. 113-19, 125-31, 146-50, 288-89). Thereafter, Plaintiff continued to receive email and written admonishments and notices of AWOL charges for failure to comply with the notification and secretarial requirements. *See id.* (App. 40, 42, 44, 60-61, 67, 71-72, 140, 143-44, 159-60, 162-63, 165-66, 168-69, 181, 185, 188, 192, 199, 269-70, 288-91). On January 13, 2012, Plaintiff and Ingram were involved in an angry confrontation concerning Plaintiff's performance appraisal. *See id.* (App. 174-75).

Plaintiff's first lawsuit ("*Henson I*") was filed on August 3, 2011. *See* Dkt. No. 28-1 (App. 292). Plaintiff alleged that IRS personnel subjected her to a hostile work environment because her "every move" was monitored and she had to comply with the

procedures for email notification to her supervisor concerning her comings and goings. *See* Dkt. No. 28-1 (App. 292-94).

Plaintiff's second lawsuit ("*Henson II*") was filed on March 6, 2012. *See id.* (App. 322). Plaintiff complained that she had been required to comply with the email notifications procedures for four years, that she had to use annual leave to attend National Day of Prayer and Black History programs, that her performance appraisals had been lowered, that she had been barred from her supervisor's office, and that her supervisor hollered at and pointed her finger in Plaintiff's face on one occasion. *See id.* (App. 322-26).

In both *Henson I* and *Henson II*, Plaintiff alleged that her hostile work environment prompted her to file several EEOC complaints. *See id.* (App. 292, 322, 324). In *Henson I*, Plaintiff alleged that she was filing the case as an appeal of her EEOC case IRS-10-0154-F, and she references a new and pending EEOC case, IRS-11-301-F. *See id.* (App. 292). In *Henson II*, Plaintiff alleges that she is filing the case as an appeal of EEOC case IRS-11-301-F. *See id.* (App. 322). She also alleges that she has filed five EEOC cases because of the hostile work environment for the last four years and that she had just added additional grievances in pending EEOC case IRS-11-0783-F. *See id.* (App. 324).

*Henson I* and *Henson II* were consolidated, and, on January 4, 2013, the District Court granted summary judgment in Defendant's favor and dismissed Plaintiff's claims in the consolidated *Henson I* and *Henson II* action ("*Henson I/II*") with prejudice. *See id.* (App. 353) (Final Judgment); *Henson*, 2013 WL 55953, at *2.

Plaintiff filed this lawsuit ("*Henson III*") on March 19, 2013. *See* Dkt. No. 3. She complains of five years of discrimination and retaliation. Plaintiff again complains that she must notify her supervisor by email when she arrives at and departs from work, leaves for and returns from lunch, and any time that she will be away from her work station for more than fifteen minutes. She also complains that her supervisor monitors her to see if she complies with the notification requirements and that she received several admonishments and negative performance reviews, including a lowered mid-year review, for allegedly failing to comply with them. In addition, she complains about an email instructing her to complete yearly mandatory briefings, violations of her privacy rights when her supervisor allegedly discussed Plaintiff's age, length of service, and retirement benefits in front of other employees, and her supervisor's comment that Plaintiff had called in "sick as a dog." She also asserts that her supervisor's administrative complaint after the hollering and finger-pointing incident led to her termination four months later. *See id.*; *see also* Dkt. No. 28-1 at 25-27, 272-76.

In *Henson III*, Plaintiff alleges that she is filing the case as an appeal to EEOC case IRS-12-0838-F. *See id.* at 1. Plaintiff explains that this EEOC case was a mixed case. The original case was IRS-11-0783-F. According to Plaintiff, four of the nineteen items alleged in that case, including the challenge to her termination, went to the Merit Systems Protection Board under that number, and the remaining fifteen items were assigned to IRS-12-0838-F. *See id. Henson III* addresses the remaining fifteen items.

In her response to the motion for summary judgment, Plaintiff argues that she

-8-

could not have brought the claims raised in *Henson III* earlier because the EEOC complaint that she is now appealing was still pending during *Henson I/II*. *See* Dkt. No. 30 at 7. And Plaintiff attaches a copy of the EEOC decision in IRS-12-0838-F to her Complaint. *See* Dkt. No. 3-2 at 38 - Dkt. 3-3 at 20. The EEOC decision is dated December 19, 2012 and gives Plaintiff the right to file a civil action within 90 days. *See* Dkt. No. 3-3 at 19-20.

A right-to-sue letter is a condition precedent to filing a Title VII claim. *See* 42 U.S.C. § 20003-5(f)(1); *Pinkard v. Pullman-Standard*, 678 F.2d 1211, 1215 (5th Cir. 1982). A Title VII plaintiff who has not received a right-so-sue letter must still comply "'with general rules governing federal litigation respecting other potentially viable claims,'" *Davis*, 383 F.3d at 316 (quoting *Woods v. Dunlop Tire Corp.*, 972 F.2d 36, 39-40 (2d Cir. 1992)), and must take the appropriate steps to prevent her claims from being precluded. Thus, even though Plaintiff did not receive a right-to-sue letter until shortly before the District Court's judgment in *Henson I* and *Henson II*, she mentioned the pending EEOC action in her complaint and she could have requested a stay until she received the letter and could bring claims in *Henson I/II*, instead of waiting to assert them later. *See Davis*, 383 F.3d at 316; *accord Murry v. General Servs. Admin.*, 553 F. App'x 362, 365-66 (5th Cir. 2014).

All but two of the allegations in *Henson III* – Ingram's alleged violation of Plaintiff's privacy rights on April 10, 2012 and improperly lowering of Plaintiff's mid-year review on April 30, 2012 – occurred before March 6, 2012, when Plaintiff filed *Henson II*, and those two incidents occurred during the pendency of *Henson I/II*, which

was finally adjudicated on January 4, 2013. "'[S]ubsequent wrongs' by a defendant constitute new causes of action," and "[a] Title VII plaintiff is free to bring successive actions, claiming in each that his employer has taken retaliatory actions against him more recent than the prior lawsuit.'" *Davis*, 383 F.3d at 314 (quoting *Blair v. City of Greenville*, 649 F.2d 365, 368 (5th Cir. 1981) and *Dawkins v. Nabisco, Inc.*, 549 F.2d 396, 397 (5th Cir. 1977)). But, for this exception to res judicata to apply, the "subsequent wrongs" must have occurred after the district court entered judgment in the prior lawsuit – put another way, when more harms arising from the same cause of action occur during the pendency of a case, claims based on those harms must be brought at that time in that case to avoid the effects of res judicata. *See id.*; *Oreck Direct, LLC v. Dyson, Inc.*, 560 F.3d 398, 402-04 (5th Cir. 2009); *Blair v. City of Greenville*, 649 F.2d 365, 368 (5th Cir. 1981) ("The doctrine does not, however, bar a suit based on acts of the defendant that have occurred subsequent to the final judgment asserted as a bar."); *accord Murry*, 553 F. App'x at 365; *Vela v. Enron Oil & Gas Co.*, No. 5:02-cv-37, 2007 WL 1564562, at *9 (S.D. Tex. May 29, 2007). In *Henson III*, the two incidents that occurred in April 2012 do not support new claims because they occurred after Plaintiff filed the lawsuit in *Henson II* but before the district court entered final judgment in *Henson I/II*.

Under the transactional test's pragmatic considerations, the claims in *Henson III* and the wrongs alleged in *Henson I/II* constitute a series of connected transactions and are the same claim. The factual allegations in all three complaints are strikingly similar, and all of the claims originate from the same continuing course of allegedly

discriminatory conduct that derives from Plaintiff's complaints about the email notification requirements and the adverse consequences of her failure to comply with those requirements.

Plaintiff herself emphasizes the common nucleus of operative facts linking her three lawsuits. In *Henson III*, Plaintiff alleges she has endured five years of discrimination and retaliation going back to November 9, 2009, when the email notification procedures were put in place, and she reiterates and expounds on her earlier allegations. *See* Dkt. No. 3 at 1-2 (Complaint); *see also* Dkt. No. 30 at 2, 5-6.

The undersigned concludes that Plaintiff's claims in *Henson III* are "so connected in time and space" to those in *Henson I / II* that they could have, and should have, been brought in the earlier action to create a single, convenient trial. *See Davis*, 383 F.3d at 314. Because Plaintiff's claims in *Henson III* are based on the same nucleus of operative facts as alleged in *Henson I* and *Henson II*, they are barred under the doctrine of res judicata.

## Recommendation

Defendant's Motion for Summary Judgment [Dkt. No. 26] should be granted, and Plaintiff's claims should be dismissed with prejudice.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or

recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: November 3, 2014

_____

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE